The Homecraft Finance Corporation brings this suit against Harry Mefsut for $475.81, the balance alleged to be due on a certain promissory note, dated March 28, 1936, drawn by Mefsut to the order of the said Finance Corporation. It is alleged that the note was originally for $552.59, that payments aggregating $76.78 have been made, but that, in spite of amicable demand, the said balance remains due and unpaid.
Mefsut admits that he executed the note sued on, that he has made certain payments thereon as alleged, and that he has not paid the balance, but he denies any liability, averring that the note was given on account of the purchase price of an electric refrigerator, which he avers proved to be totally unfit for the purpose for which it was sold; that there has been a failure of consideration.
In the District Court there was judgment by default in favor of plaintiff as prayed for, but a new trial was granted and, when the case was heard on the merits, judgment was rendered in favor of defendant. Plaintiff has appealed.
Mefsut, at the time at which he executed the note operated a restaurant near the French Market in New Orleans. He says that during the early part of the year 1936, he was visited by a Mr. Mathews, a salesman for the Maison Blanche Company, who persuaded him to purchase an electric ice-box to be used in connection with his restaurant. He says that he knew nothing about such machines, but that Mathews made and caused to be made various tests of temperature, and measured the space available in his kitchen, and did everything else necessary to determine what type of box would be best suited to his needs, and that he gave to the said Mathews all necessary information as to the number of customers, the quantities of food to be kept and that Mathews then recommended the box which Mefsut, on this recommendation, agreed to buy.
Mefsut says that as soon as the box was installed it began to give trouble and that meats and poultry became green and slimy and, within a few hours, were not fit for human consumption. He states also that in spite of the fact that experts of the Maison Blanche Company, and of the company which had manufactured the machine, continued to make alterations and changes in it, no better results were obtained. He testifies that it was necessary to change the location of the equipment of the ice-box and that he was required to install additional electric service for the operation of the motor, but that in spite of all of these changes, and in spite of the fact that he did everything required of him, the box failed completely to serve the purpose for which it was intended, and that therefore the Maison Blanche Company and the manufacturers of the box recommended that an air cooled compressor, which had come with the machine, be removed and that a water cooled one be substituted; that this was done at a cost to him of $90, but that even after the change the box continued to be entirely unsatisfactory and that, finally, he discontinued using it and notified the Maison Blanche Company to remove it.
Several dealers from whom Mefsut bought poultry and meats testified that they put into the box the very best of these products but that on many occasions, *Page 123 
on the very next day, they found the meats and the chickens to be slimy and green, and that they could not be used and that, therefore, they refused to furnish Mefsut with further meats and poultry unless he would agree to put them in some other refrigerator; that he did this, making use of an ice-cooled box which he had on hand.
Experts in electric refrigeration testified on behalf of Mefsut, stating that the box was not one designed for use in such an establishment, that it was obviously a large domestic box and should not have been recommended for a restaurant.
As against this evidence, plaintiff introduced witnesses who stated that the box had been selected by Mefsut and who also stated that the equipment was entirely suited for his place of business but that he persistently permitted the cooling coils to become so greasy and dirty that they could not perform the function for which they were intended. These witnesses also said that on several occasions they found that the defendant, or his employees, had placed in the box cardboard egg containers or other thick or solid articles which prevented the proper circulation of air.
Plaintiff also introduced evidence to show that certain temperature testing devices and recording clocks had been placed in the box and that these devices showed that the box could maintain a temperature even substantially lower than that required for the proper preservation of such foods as were placed in it.
However, defendant's expert witnesses testified that a reading of these recording cards showed that they must have been made during periods within which the box was not opened, and they suggested also that when these tests were made probably nothing had been placed in the box and that, therefore, although apparently satisfactory results had been obtained, the same results would not have been produced had the tests been made while the box was in the normal service for which it was intended.
There is much controversy between the witnesses as to whether the box was a domestic one or a commercial one, and we are unable to say from the record which witnesses are correct in this regard. The box does not seem to be listed in the manufacturer's catalogue of domestic boxes, and, on the other hand, it does not seem to be listed either among the manufacturer's commercial equipment. It is mentioned as a special duty refrigerator but just what this means we are not told.
The testimony that the box failed to operate efficiently substantially preponderates, the record showing overwhelmingly that, for several months after the box had been installed, perishable foods placed in it spoiled very quickly and we have no doubt at all that it failed to serve the purpose for which it was intended. It may be that defendant and his employees were careless in not properly cleaning the cooling coils, but we cannot believe that this was the cause for the inefficient operation of the refrigerator. It was unsatisfactory almost from the moment at which it was installed, and, in fact, the necessity for the change from the air cooled compressor to a water cooled one would indicate a realization that, as originally installed, it could not do the work for which it was sold. There is in the record no substantial contradiction of Mefsut's testimony that Mathews, the salesman for the Maison Blanche Company, recommended the box after making all of the tests which he thought were necessary. In fact, Mathews was not even placed on the witness stand by plaintiff, although the record shows that his address was either known, or could have easily been obtained.
There are two circumstances which, at first, seemed to weigh rather heavily against Mefsut. The first is that during the period within which he says that the box was proving most unsatisfactory, he made payments on the note, and the second is that he has retained the box ever since it was first installed in March, 1936. Both he and his wife testified that they made payments only because on each occasion when they did so, the Maison Blanche Company agreed to make such necessary changes or repairs as might be necessary and continued to say that the box would be made satisfactory.
When asked why he had not returned the box and why he had permitted it to remain in his establishment from March, 1936, when it was first sold, until the trial of the case, which was in June, 1938, he said that on several occasions he had told the Maison Blanche Company that he did not want the box, and that on one occasion he had written them a letter, asking that they remove it, but that they had always replied by coming down and making an effort to make it satisfactory, and that, therefore, he had continued to try to make use of the *Page 124 
box until the fall of 1936, and that he and his wife had given up the establishment to a Mr. Stein, and gone to North Carolina, leaving the box in the place, but notifying Stein that the box belonged to the Maison Blanche Company and was not to be used.
Mefsut says that if Stein used it during that period he had no knowledge of this fact. And he says that when later he found it necessary to take back his establishment, he came back to New Orleans and took it over but that he did not use the box except possibly for storage, and that he did this only because the box was quite large and occupied much valuable space in his kitchen.
Originally there was a contention by the plaintiff that the defense of failure of consideration could not be relied upon by the defendant here for the reason that the box had been bought from the Maison Blanche Company, whereas the notes are owned by the plaintiff, the Homecraft Finance Corporation. This contention was abandoned and it was conceded by counsel that any defense that could have been made against the vendor of the box might be made against the holder of the note.
As we have said, the record leaves no doubt that the box was entirely unsuited for the purpose for which it was sold. The evidence to this effect overwhelmingly preponderates.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.